Manhattan By Sail, Inc. v. Tagle May it please the Court, my name is Jonathan Ratchick with the law firm of Kramer & Dunleavy. We are here for the respondent appellant, Karis Tagle, in this matter. This appeal is about a district court's misapplication of a law when it dismissed the claim and denied any measure of justice to Ms. Tagle, who was a passenger on board the Shearwater schooner for a paid sightseeing excursion in and around New York Harbor. She sat where she was told to be seated by a crew member and, through no fault of her own, was violently struck in the head by a metal clip, which one of their deckhands was attempting to attach to the fore stasel when he inexplicably lost control of it and dropped it. At the time, Ms. Tagle was a mother of two. She was pursuing a master's degree in secondary education and had just actually gotten engaged the night before on the top of the Empire State Building. That's not really highly relevant. I understand, Your Honor. But she is now unemployed and on Social Security. That's how she supports herself and her family. By dismissing the claim, in dismissing the claim, the district court refused to apply the doctrine of res ipsa loquitur. More than a dismissal, right? I mean, this went to a trial. It was a bench trial, Your Honor. Correct. Bench trial decision. Okay. Predicated largely, almost entirely, upon the district court's refusal to apply the doctrine of res ipsa loquitur. Just so I'm clear, that is your argument. Correct. Nonappeal is all about res ipsa loquitur. Correct, Your Honor. And the reason for which the district court did not apply the doctrine is because the court felt that this was only applicable to incidents that could occur only because of someone's negligence. And this is not and has never been the standard for application of the res ipsa loquitur doctrine, either by this Court or New York's Court of Appeals. The standard and the application of the doctrine is warranted in the event that whether the incident is of a kind which ordinarily does not occur in the absence of someone's negligence. The district court went ahead after that and said, well, this kind of thing can happen without negligence. Correct. If I'm not applying the doctrine, which was not the standard. Which is not and has never been the standard. But I'm not even sure why there was any need to talk about res ipsa loquitur in the district court or here, although it can help the plaintiff. But when somebody is innocent, when a trained seaman is in a position where he's holding a heavy line which is under tension because it's stretched out towards the foresail, and if one lets go of it, it's going to swing and it's pulling on you with the force of gravity, the seaman's duty is to hold it secure and not let this dangerous thing swing. Absolutely. And if the seaman, I mean, it's like if a waiter has the obligation to carry a great big birthday cake to the table and the waiter drops it on the floor, that's negligence. Not as dangerous negligence as if the seaman lets the thing go. I just don't see where the problem is in this case. I mean, here's a seaman whose job was hold this thing. There's no explanation other than negligence. Nothing was offered. No wave. No sudden anything. The fact that these things can happen at sea, I just don't see what that has to do with it. No one said any of them did. And Your Honor is 100 percent correct. Mr. Christopher Biggins, who was the deckhand who was holding this clip before he dropped it, testified at trial that he had no explanation whatsoever as to why he dropped the pelican clip and the line to which it was attached. After trial, I think it was after trial, the district court judge wrote that Biggins testified credibly that he was handling the halyard carefully when he lost control of the line. Now, what are we supposed to do with that one way or the other? I'm not suggesting that's the end of the matter, but what are we supposed to do with the finding after trial that he was careful? Well, his testimony that he was careful, I think, is certainly belied by the fact that he inexplicably dropped the clip. And in the absence of the line, he was careful. But in the first place, I think you might say to Judge Sack that the district court mischaracterized what he testified to because he did not say, if my understanding of the record is correct, he did not say that he handled the line carefully. He said, it's my habit to handle the line carefully. He didn't allude to this, nor did he say that the line was foul. He said the only reason why you would unclip it from the forcas, for sale, is if the line was foul. But he didn't say that the line was foul. He said nothing in explanation of any of these things. Well, that would be factual finding would be we'll let you get in on this before long, but the factual finding would be that it was that statement, her conclusion was clearly erroneous as a matter of fact. It was, Your Honor. It was an erroneous conclusion as a matter of fact because there was no evidence the evidence in the case belies his any conclusion that he was handling the line carefully. He had no explanation. There's no evidence that any type of rogue wave, wind, or sudden gust of wind caused Mr. Biggins to lose control of the line attached to the force statement, to the clip attached to the Halyard line. It was that there might have been. Correct. There might have been. It's a supposition by the district court that because he might, there might have been a wind or a wave or a wake, that that's the reason for which he lost control of the line. But there's no evidence to that effect. It is an assumption. Let me see how that plays into the calculation here. There was testimony that, you know, waves, wind, other things can create hazards. There was also testimony that this particular day was, as I understand it, a nice day. So you've got the possibility that certain factors can contribute to an accident other than negligence. Whose burden is it to adduce evidence that those were the conditions of the day? If it's possible, but, you know, no one's testifying to it, how does that fit into the calculation? Sure. Well, applying it under the rubric of the res ipsa doctrine, you know, the res ipsa allows an inference by the fact finder that the incident would not have occurred but allows them to find negligence on the part of the shear water. You're saying that they would have to come in because res ipsa is not an absolute. Correct. It creates a prima facie. All right. But my question is maybe that it comes a little differently. I'm not sure to your client's detriment, but that when one considers how ordinarily an accident happens, does one start by considering the conditions of the day? I mean, if it were a terribly blustery, stormy day, you would start with that and then decide how does an accident ordinarily happen in those circumstances. Here the circumstances were that it was a the weather was good that day. Is it your burden to show what the conditions are, and now then let's talk about what ordinarily causes an accident in those conditions? I think it would be to escape a finding or conclusion of negligence, it would be upon the shear water to come forward and say, hold on, this wasn't due because of his absence of care. This was due to maritime conditions. And then come forward with some evidence to show that any such maritime conditions caused or contributed to the incident, that there was some external force that caused Mr. Biggins to lose control of the line. To make clear, the maritime conditions, as I understand it, is a broader category than weather, so that you might have a lovely day, but also have lots of wake of larger ships or different ships, and it could be a wake of other ships could be instead. It could be, except Mr. Biggins, no one on behalf of the shear water ever testified that any such conditions contributed to him losing, to him dropping the line or losing control of the pelican clip. The only evidence is that he dropped it because he was careless and negligent. And the court can look at photographs of New York, Upper New York Harbor on the date of this incident. They show a picture-perfect day for sailing with little to no waves or wakes in the harbor. It stands in stark contrast to the types of cases in which courts have not applied the race to local doctrine, such as cases that take place on the high seas, where there's, you know, where the ship is pitching back and forth in a moderate, you know, in moderate seas with gale force winds, or where there's an aberrational, you know, rogue wave that comes and knocks the boat, you know, knocks the boat over. That's not what happened in this case. There's no, they had no explanation as to why he lost control of the line. And in the absence of any type of explanation whatsoever, the inescapable conclusion is that he dropped it because he was negligent, because he was careless, because he's like the waiter in the restaurant who drops the tray of food. I would just also add that the reason for which, you know, that these types of things do not ordinarily happen, find support in the Shearwater's own deckhand manual. In their manual, you know, they talk about how that, you know, if you don't handle, if you handle lines recklessly or carelessly, that can cause injury to someone. But that if you follow commands, all of your, all of these sails will be safe and enjoyable. Not that some of them will be safe and enjoyable. All of them will be safe. Thomas Burton, who's the owner of the Shearwater, testified how of the 80,000 people who have sailed on board this vessel, you know, members of the public and families, no one has ever gotten hit in the head by a crew member who dropped a pelican clip. This is not an ordinary event. This is an extraordinary event occasioned by the crew member's inescapable negligence. I would just add that, you know, the other reason that the court gave for not applying this doctrine is because. It's interesting. I wonder whether the fact that it never happened before is an indication of negligence or an indication that that's not something you worry about. You know, do care, do care is easy because it never happens. Well, it certainly, it certainly belies any claim that this was, this was certainly not something, an event that Miss Tagle could have somehow foreseen, you know, when she came on board the vessel. Absolutely. I don't think anybody suggested that, have they? No. And the question that a line with a heavy weight at the end of it, which is extended out forward from the mast, it's heavy. And if one releases it from the fore staysail so that it's just hanging free, it is a potentially dangerous force. It is. And it's, and it's pulling on you because gravity pulls it away and you've got to hold on tight or you've got, I mean, there was plenty of evidence that this was a dangerous thing. It is dangerous. And what happens is that when, you know, the clip is used to attach to the fore staysail and then you haul it up. But if it's not attached and you let go of it, it swings like a pendulum. And Miss Tagle was seated right where this would come to rest, you know, on the axle hatch and struck her in the head. It is something that a deckhand has to exercise, you know, extreme diligence when handling, especially when there's an excursion underway, to prevent this very type of incident from occurring. But, you know, the Supreme Court in the Johnson case not only talked about how the mere fact of dropping something, you know, is you can infer negligence from that, but also stated that no act need to be explicable solely in terms of what the district court did. An occurrence does not have to be explained solely by reason of negligence in order for the doctrine of res ipsa to apply. You know, it — Kennedy. As Judge LaValle said, we're talking about negligence. I don't — at the end of the day, I'm not quite sure that res ipsa matters a whole lot. It's just — it would add perhaps an arrow to your bow, but you're arguing that it was negligent, period. Res ipsa, you wouldn't even have to be able to translate that from the Latin to win the case if that was — if those are the facts. They are, Your Honor. I mean, at the end of the day, the district court — Well, I suppose it's because you don't know exactly how it happened or your client didn't see him. Correct. No one knows exactly why this happened. So in that sense, you're using res ipsa, that ordinarily it wouldn't happen except for negligence. Correct. Okay. This is the type of event that does not ordinarily happen in the absence of someone's negligence. And certainly when the explanation is so lacking, really the only finding I think that the district court could have made is one of negligence. And, you know, its failure to do so was error and respectfully warrants a reversal of the judgment in favor of the — of the shearwater. Thank you, Your Honors. Your adversary. May it please the Court — I'll just make this go up a little bit. My name is Garrett Grussell from Nicoletti, Hornig & Sweeney. We represent the appellees in this matter. The appeal in this case is based on one issue, and the panel's already highlighted that. It's whether or not the court erred on applying res ipsa. There's no appeal on findings of fact by the court. So with the court's decision based on the facts that she found that Mr. Biggins exercised reasonable, prudent care, that finding is not on appeal. The only appeal that's before the court relates to whether or not it was error for the court — That would be real nice for you, but — It is whether or not the court — the court should have applied res ipsa. You know, if a — let's say that a pilot lands a plane. Instead of landing on the runway, he lands the plane on a house short of the runway. And the pilot testifies, oh, I always fly planes carefully. Careful is my middle name. Who wins? Well, really — Somebody comes up and says, oh, you know, things can happen when you fly planes. Like a pilot can — one thing can happen, a pilot can have a stroke. And — but — or there can suddenly be fantastic drafts of winds that can suck a plane down so that they land — so that they hit the ground. A lot of things can happen. Who wins the case? Well, it all depends on who has the burden of proof for negligence. Oh, it does? Well, the plaintiff has the burden of proof of proving negligence. And the plaintiff proved that the pilot who was supposed to land on the runway instead landed on a house. That means that the pilot has to — the plaintiff has to get the pilot to say, oh, it was all my fault in order to win that case? The pilot — the airline can win or the pilot can win just by saying, I always fly carefully? No. No. What the plaintiff has — what the plaintiff or, in this case, the claimant or respondent has to do is prove that there was a duty of care, that duty of care is brief. There's no doubt that there was a duty of care. The seaman was holding a heavy line stretched out to the front so that if he didn't let it — if he let it go, it was going to swing. And there was expert testimony that that would be real dangerous. And it is. Obviously, you don't need expert testimony to prove that. It's just like obvious. If you don't hold a heavy line when it's stretched out forward, if you let go of it, it's going to swing. And it's hard to hold it because it's heavy and it wants to go that way. The expert also discussed the duty of care that you cannot eliminate all swinging and flying hazards. It can only minimize them. That was because of possible conditions, none of which there was any evidence was on that particular day. I mean, that's my concern about when you assess whether ordinarily an accident would be attributable to negligence, you consider the circumstances of that day. I mean, am I right? There's no evidence that there were winds or waves or heavy traffic or anything to cause the pilot to drop the line. And, in fact, the pilot himself didn't testify to any of those occurrences. The deckhand did not recall what caused him to. How could he not recall? I mean, it's not as if it emerged a month later that a bad thing happened and he couldn't remember, I couldn't remember the circumstances. One second or two seconds after he lost the control of the line, it smacked a passenger on the head and she was bleeding all over the place. So if there was something that caused him to lose control of the line, it's pretty obvious that it's called to his attention and he should be able to know what it was. If suddenly a gale force wind wrenched the thing from his hand, he would know that and he would testify to it. But he didn't say anything. He just said, I'm always careful. I don't know why the witness didn't understand on testimony at the trial. The accident occurred roughly five years ago. Yeah, but he knew that the accident occurred a second after he lost control. There's a lot of dynamic conditions in this area where the accident took place, and that was established through both expert testimony. If it's as treacherous as your brief suggests it is, then I would think you would have every person on board these ships wearing a helmet. I mean, you make it sound as if, boy, you can't control these lines. You just can't have any assurances that you can control these lines. You've never had an accident until this one. And so the question is, does all of this bespeak at a minimum that res ipsa loquitur should apply? Now, you know, you've heard my colleague suggest to you that the plaintiff may not even need that, but start with res ipsa. Why in those circumstances does res ipsa not apply? Again, res ipsa is the trier fact is permitted to use res ipsa. And the district court here did not. That's the error that's being argued to us, that res ipsa does apply, that the district judge misunderstood the concept when she suggested that, well, because there were other possible explanations, not fact specific to this day or these people, but just in general, that res ipsa shouldn't apply. The case law is very clear that there's no requirement that the trier fact rely or apply res ipsa. But it is required that the trier fact correctly understand the principle. And I believe that the trial judge did correctly understand the principle. She cited the correct standard, ordinarily does not occur. And she cited the incorrect standard when she went to apply it to the facts of this case. She once recited it correctly. And then she said, well, accidents can happen on the seas without negligence, therefore I'm not applying it, which was, without question, an incorrect statement of the standard. Well, I think that ties into Ms. Tegel's own expert, who says that you cannot eliminate all flying hazards when the vessel is under sail. That doesn't mean you can eliminate any flying hazards. You can eliminate some just by exercising due care so that the line doesn't fly out of your hands. And due care requires a minimization of flying hazards on board the vessel, not an elimination. What other explanation is there for this accident other than negligence? That the sea conditions, either by way of traffic or wind created waves. And what evidence is there of that on this day? Specifically with respect to this day, we just know that this particular area has very turbulent waters. Supposing race ipsa does apply and the court was wrong, misunderstood it, should have applied it. Does that mean we should send it back to the finder of fact and say, hey, you were wrong, you should apply it? Or do we then look at the record and decide whether or not race ipsa applies? There was negligence. I don't think that a determination of whether or not it should have applied before this court should have any bearing to the ultimate conclusion of this case. If the record of this case, the record of this trial shows a record that does not support any cause for the accident other than negligence, if the record is one on which the plaintiff has sustained the plaintiff's burden of showing negligence and the defendant has come forward with nothing to point to a cause other than negligence for this accident, why shouldn't this court rule that negligence was shown, whether by race ipsa or just by logic, and direct a verdict in favor of liability in favor of the plaintiff? You had your opportunity to prove facts that would place negligence in dispute, and you didn't. If we conclude, that's what the record shows. I think the record does show, and this is ultimately what the trial judge did find, was that Mr. Biggins did handle the line at issue in a prudent, reasonable manner. She was the trier of fact. Based on what? Based on his experience as a seaman on sailing vessels and his testimony with respect to what he was doing at the time. Which was what? What was his testimony? That, well, he couldn't exactly recall everything, but what he did remember was that he handled the lines in a prudent, reasonable manner just like he always does, and he doesn't know why the line pulled out from his hand. But the Court, as trier of fact, can gauge the testimony of the witnesses and make inferences in this particular case that Mr. Biggins did handle the line in a reasonable, prudent manner. And if that's what the Court found, and again, that's not what's on appeal here, you don't even have to deal with the reciprocity issue because that presumption, if she chose to apply it, which is also permissive, would have been rebutted by his testimony that he's an experienced captain and that her finding that he was handling the line in a prudent manner. Also, that you cannot minimize all of it. Make that finding if the person doesn't know how something came to go out of his hand. I mean, he doesn't testify, I felt a sudden jerk, I lost my balance, the ship, you know, moved in direction. And, you know, you say five years after the fact, there's a ship's log about this accident, and it doesn't say that it's, it doesn't have any recollection of any event like that. So how can you find that at the moment of the accident, he's handling it carefully when he, there's no testimony to say that he, this happened due to some circumstance out of his control? Well, the testimony, and there was actually video evidence that was presented at trial, was exactly how the line is handled in this particular circumstance and the court viewed this evidence and heard this testimony and found that the way that the line was handled. You agree that dropping it, dropping the item is not the way it's supposed to be handled, right? It's not, but unfortunately you can't eliminate every time that. Do you tell your passengers that, by the way, when they board? I mean, this is a pleasure cruise. Do you tell your passengers when they board that the crew will not be able to assure control of the lines and that there can be serious accidents? At the beginning of every cruise, there's a safety briefing that's provided to all passengers, and among them are to be looking out for where you are, watching where you're going, items like that so that passengers are fully aware to have situational awareness. You're saying that the passenger's failure to look where she was going or anything caused this accident? We didn't argue that at trial. We're not arguing right now. What we're arguing is that, unfortunately, because of the way sailing vessels operate, it's impossible to eliminate all flying hazards. You told her to sit in the most dangerous spot from this particular hazard because when the thing swings, when it's extended out, it'll be up, it'll be raised, but just its lowest point is right there next to the mast where you told her to sit so that either side, if she'd been sitting a distance from the mast, it would have swung up over her head. But right there, you put her in the most dangerous spot from this thing, which you say is likely to happen at any time. I don't believe that we put her in the most dangerous spot. First, this has never happened before. I think there was testimony that lines do get pulled out of hands, but there was no testimony that this ever happened before. There's really no notice. And the crew members were utilizing their best way of handling the line. What's the best they can do? The Coast Guard only requires a captain and a deckhand to operate that vessel. You mentioned a video. Yes. Is that in the record? It was a trial exhibit. I don't believe it was put in the appellate record. All right. Thank you, Mr. Russell. Thank you. Mr. Ratchett from Rebuttal. I'll just be brief, Your Honor, because I think we've already vetted all the issues that are present on this appeal. At the end of the day, there is absolutely no evidence that anything other than the deckhand's negligence caused and contributed to this really tragic incident from occurring. The district court talks about conditions in New York Harbor, but as Your Honor correctly pointed out, there's no evidence that any specific – that any such conditions specifically caused or contributed to this incident. There's no evidence that any waves or wakes or sudden gusts of wind. I understand that argument. Does that have anything to do, and if so, what, with the issue of race ipsa? Well, it just – again, it does because race ipsa – because it just goes to the this is not the type of event that ordinarily occurs in the absence of someone's negligence. I mean, this is something that if this was their explanation, they would have had evidence of it, but the shearwater did not induce any evidence whatsoever that any such of these conditions. I wonder whether that isn't too broad. Automobiles don't ordinarily strike buses. I'm not sure that when an automobile strikes a bus, that's necessarily race ipsa, is it? No, but, for example, an automobile doesn't ordinarily leave the road, and that is race ipsa. An automobile that veers off the highway, that's a presumption of negligence against the driver of the vehicle. So it's a presumption of negligence, and certainly as I think as this Court has alluded to. Allowed an inference. An inference of negligence, but really an inescapable inference, and one which I think as this Court has alluded to. Well, it's inescapable if there's a demonstration of some non-negligence. Correct. Which there has not been in this case, and certainly I think it would be within this Court's power to search the record and to not only reverse the court – the district court's finding error in not applying the doctrine of race ipsa, but also its ultimate conclusion that there was no negligence on the part of the shearwater. Let me ask you about that. It's 11th finding. The district court says that the court credits Biggin's testimony that he was handling the halyard carefully when he lost control of the line. Now, Mr. Russell emphasized that and suggested that race ipsa or not, that finding of fact is one that defeats your appeal. So do we – what do we have to say with respect to that finding, consistent with what you're urging here? There's no evidentiary basis for the district court's finding. Well, it's his testimony. He testified to that, and he's got – he was directly involved. So that's the basis for it. Tell me what else. And the basis is belied by the fact that he dropped this clip and the line to which it was attached. Did he in fact say, I was handling the line carefully? I'm not sure it would matter to me, but I don't think he even said that. I think that he – it's my understanding that what he said was a general statement about his habit. It's my habit to handle lines carefully. No. I mean, he testified, and I quote on page 78 of the appendix, you know, I was the one handling the line. And why were you doing that? You know, he thought maybe to clear a foul, and then the line got out of his hand. I mean, this is just a – this is just a leap that the district courts made – that the district court made without any evidentiary support for it. So you're saying his own testimony doesn't support that? It doesn't. And again, it's belied by the incident itself. Not that we would decide whether we credit or don't credit anything. Correct. Even if you credit it, he didn't say this. Yes. And there's no way to disprove that type of testimony. I mean, it's so self-serving. It's, oh, well, I was being careful that day. Well, but self-serving testimony when you're the finder of fact and you get to assess the person's demeanor is something we generally defer to. Correct. All right. Thank you very much to both sides. We're going to take the case under advisement and try and get you a decision as quickly as we can.